THE NEW-YORK AND HARLEM RAILROAD COMPANY *vs.* STORY and others.

In an action by one party to an executory contract for work and labor, against the other, to recover the damages sustained by the plaintiffs in consequence of the suspension of the work by the defendants, the market price or fair value of the work agreed to be performed by the plaintiffs, on the day of the breach, is to govern in the assessment of damages.

The difference between the price which the plaintiffs were to receive from the defendants and the price which they were to pay their sub-contractors for doing the work, is not the true measure of damages.

The damages are to be settled and ascertained according to the existing state of the market at the time the cause of action arose, and not by the market price of labor and materials at the time fixed for full performance.

ERROR to the superior court of New-York. Story and others sued the Harlem Railroad Company in covenant upon a sealed contract made by the plaintiffs with the railroad company for making about twelve miles of the Harlem Railroad, from Williamsbridge to White Plains. By this contract the contractors were to be paid half in the bonds of the company and half in cash. "The cash portion to depend upon a subscription made by the inhabitants of Westchester county." And in case that subscription should not be paid, the company reserved the right of stopping the work until they could obtain such installments. The terms of the Westchester subscription were that the subscribers were to loan to the company the amount set opposite to their names, payable in ten monthly installments commencing August 1, 1841, with interest. The company were to execute their bonds to each subscriber, for the amount subscribed, payable in five years, with interest semi-annually, secured by a mortgage to Gouverneur Morris, (including the sum of $40,000 then due to him) as a first lien upon the road, from Harlem river to White Plains. The Westchester subscribers paid one or two of the installments. The railroad company never gave the mortgage, and they could not give it; not having obtained the right of way. In consequence of this default the Westchester

subscribers refused further payment.   The railroad company ceased paying the contractors, and finally, in September, 1842, stopped the plaintiffs in their work, and prevented them from fulfilling their contract.   The plaintiffs had sub-contracted for the entire work, at fixed prices, which, if they had been allowed to complete their contract, would have given them a profit. The sub-contracts were made under the eye, and with the approbation, of Mr. Shipman, the engineer of the company.   The cause was referred to referees to hear and determine.   On the trial before them the plaintiffs proved the execution of the contract, and the amount of labor performed by them up to the time they were stopped by the company.   They also proved, by the engineer, the amount of profits which they would have made, had they been permitted to complete the contract; being the difference between the contract price of the entire job and the amount for which they had contracted to have the same performed by sub-contractors.   The referees reported in favor of the plaintiffs for $19,020,51 ; the report specifying the items upon which it was founded, with the conclusions of the referees upon the proofs.   It embraced an allowance for the work done under the contract, by the plaintiffs, at the time they were stopped ; interest upon the balance due them on that account ; damages in consequence of suspending the work ; and nominal damages.   The report was confirmed by the superior court, and judgment was given for the plaintiffs ; whereupon the defendants brought a writ of error.

*C. W. Sandford & C. O'Conor*, for the plaintiffs in error.

*S. Sherwood*, for the defendants in error.

*By the Court*, EDMONDS. J.   This court can review this case only on questions of law ;  and we therefore necessarily lay out of view many of the considerations suggested in the arguments of the counsel, because they involve mere questions of fact.   The first objection is of this character.   It does not appear that the referees ruled that the approval of Shipman was conclusive as

New-York & Harlem Railroad Co. *v.* Story.

to the quantity and quality of the work performed. If they had so held it would have been improper for them to receive the testimony of Anderson and Shotwell. They received that testimony, however, as well as that of Shipman; and whether they were right or wrong in giving superior weight to Shipman's evidence, is a question which we cannot consider, because it is a question as to the weight of testimony, peculiarly within the province of the referees and the court below.

The second objection may involve both questions of law and fact: of law so far as it relates to the construction of the contract, and of fact so far as the question is raised whether the stoppage of payments by the Westchester subscribers was not caused by the railroad company. It is difficult to ascertain, from the case, on which of these grounds the referees found for the plaintiffs below. They may have found for the defendants below on the question of law and have concluded that the failure of the Westchester subscribers to pay their several amounts gave the railroad company a right to stop the work; yet as a matter of fact they may have found that such failure was caused by the railroad company itself, and that therefore it was not competent for the company to set up such failure as a defense to the claim in this suit. It would not therefore be proper for this court to entertain this objection, as they might be dealing in matters of fact, which, on this hearing, are not within their province.

The *third* objection is also of the character of those which we cannot, as a court of errors, review. It is that damages were allowed by the referees without having evidence of the nature and amount of those damages. They had evidence before them, on that subject, and whether they gave to that evidence its proper weight, or arrived at a just conclusion upon it, are questions of fact not properly before us.

The *fourth* objection, however, may involve a question of law, in this, that it may raise the inquiry whether the difference between the price which the contractors were to receive from the railroad company and the price which they were to pay their sub-contractors was the true measure of damages. It is evident that that was the rule which the referees adopted; but it is not

New-York & Harlem Railroad Co. *v.* Story.

so evident that it was not so adopted only as a mode of ascertaining the actual value of a good bargain to the contractor, which is a legitimate item of damages, and constitutes a ground of recovery. The testimony was that the witness had the subcontracts in his possession and made an estimate of the profits which the contractors (the plaintiffs below) would have made by reason of their having sub-contracted the work for less than they were to receive. The motion to strike out this testimony was denied by the referees, not because that was a proper measure of the damages, but because the evidence was competent, and the questions whether the referees would adopt it, or how far they would be governed by it, were questions on the merits, to be finally adjudicated. In their final adjudication they announced their determination on this point in these words : " Damages sustained by the plaintiffs by reason of the suspension of the work, and not being permitted to complete contract, $6624,44." And in the application made in the court below to set aside the report, the defendants below assumed, as one ground of objection, that the referees had allowed as damages the estimated profits which would have resulted in case the sub-contracts had been performed. The referees did not, nor did the court below, any where decide that such difference was not the just measure of damages ; but the referees expressly reserved to the final adjudication, the question whether they would or would not adopt it. Now when we consider that the referees, on their final adjudication, awarded for damages in this regard, the precise sum which was arrived at by the witness on a calculation of the difference between the contract and sub-contract prices, that they received no evidence as to the market value or fair price of the work to be performed, estimated as of the time when the contract was broken, and that the court below overruled the objection founded expressly on the assumption that such had been the rule of damages, we are warranted in supposing that the referees did adopt it as their measure of damage, and that the court below sustained them in it.

In this there was error, (*Masterton* v. *Brooklyn,* 7 *Hill,* 61 ;) and for this simple reason, that the market price or fair value

on the day of the breach is to govern in the assessment of damages; and they are to be settled and determined according to the existing state of the market at the time the cause of action arose, and not at the time fixed for full performance. Whereas the rule which I assume that the referees adopted, and which alone would warrant the testimony they received, has reference solely to the period of the full completion of the work.

The *fifth* objection relates to the allowance of interest, and is founded on the allegations that it was not demanded on the trial, and that it is not warranted in law. The first of these allegations is for the court below alone, and the latter is the only one we can consider. The referees have doubtless allowed interest on the ground that the evidence warranted them in finding that as to the sum on which they allowed interest, there was a stated account and a balance struck. If the evidence warranted this finding, they were right in allowing interest; and whether it did warrant such finding is a question which it is not in our province to consider. We cannot therefore say there was error in this.

For the error then of the referees in the rule of damages which they adopted, and in receiving the testimony which they admitted on that point, their report ought to have been set aside. The judgment of the superior court must be reversed, and a venire de novo awarded.