## BERGENTHAL vs. FIEBRANTZ.

*December 16, 1879 — February 24, 1880.*

PRACTICE: BILL OF EXCEPTIONS. *(1) How question of regularity in settling bill of exceptions must be raised.*
CONTRACT: AGENCY. *(2) Settlement of disputed claim, by agent.*

1. When the judge of the court below settles and· signs a bill of exceptions upon an appeal, he thereby determines the regularity of the proceedings preliminary thereto; and such determination cannot be reviewed upon that appeal; but the remedy is by motion to strike the bill from the files. *Oliver v. Town,* 24 Wis., 512; *Sexton v. Willard,* 27 id., 465.
2. Where a disputed claim was presented to the agent of the alleged debtor, in charge of his business and authorized to pay his debts, which claim was probably not enforceable by suit but rested only in moral obligation, and it was presented in good faith, without fraud or misrepresentation, and the agent, with knowledge of all the material facts, compromised the claim, and settled it by payment of a smaller sum: *Held,* that the principal could not recover the sum paid.

APPEAL from the County Court of *Milwaukee* County.

Action to recover $300 alleged to have been paid to the defendant by one William Bergenthal,· the agent of the plaintiff, for the plaintiff, through a mistake of fact arising from a misrepresentation of the defendant.

Bergenthal vs. Fiebrantz.

The complaint alleges that in 1875 the plaintiff was in Europe, and William Bergenthal, his brother, had in his absence the general charge and management of his business in Milwaukee; that the defendant stated and represented to William, while so acting for the plaintiff, that the latter was indebted to him in the sum of $300, on account of an alleged transaction for the purchase or sale of salt theretofore had between them, and demanded that sum of William as plaintiff's agent; that William had no knowledge of the transaction, but, relying upon the truth of defendant's statement, paid defendant, for the plaintiff, the money demanded; that plaintiff was not indebted to the defendant in any sum; that the money was paid by William through a mistake as to the fact of such indebtedness; and that repayment of the sum so paid has been duly demanded of the defendant.

The answer alleges that at the time mentioned in the complaint the plaintiff and William Bergenthal were partners engaged in the business of distilling in Milwaukee; that their distillery had been theretofore seized by the United States for nonpayment of some tax or assessment upon it of over $5,000, and was advertised to be sold; that, at the time and place appointed for the sale of the distillery, the defendant attended, intending to bid therefor $4,000, and prepared to pay the amount of his bid; that thereupon, after some negotiations, William Bergenthal offered the defendant $300 if he would not bid on the property; and that defendant accepted the offer, and the money was then and there paid to him by William, which is the same money sued for in this action. And it further alleges that the distillery was offered for sale at public auction by the proper officer; that the defendant did not bid, but the United States bid therefor $2,000, and a brother of the plaintiff bid $2,001, whereupon the property was declared sold to the latter.

The answer also alleges that plaintiff is indebted to defendant in the sum of $300 on account of an executory contract

made in 1865 for the sale and purchase of a quantity of salt, which contract plaintiff failed to perform.

Except as above, the answer is a general denial.

It appeared by the evidence given on the trial, that plaintiff's distillery was seized in 1875 and sold by the United States for nonpayment of a tax or assessment upon it of $4,500; that at the sale there were but two bids, one in behalf of the United States, of $2,000, and the other by a brother of the plaintiff, of $2,001; that the defendant was present at the sale but made no bid, and William Bergenthal paid him the $300 in controversy immediately after the sale. As to whether the $300 was paid to the defendant on the salt transaction, or in consideration that he would not bid on the distillery, the testimony is conflicting.

The plaintiff testified that he was not indebted to the defendant in 1875, or at any other time; also, that in 1860 or 1861 he agreed to sell defendant two hundred barrels of salt at a stipulated price, provided he had the same in his warehouse in Winona; but it turned out that he had none, his agent having sold all the salt the plaintiff previously had there. He further testified that after the making of such conditional agreement the price of salt advanced.

The defendant testified that the contract for the sale and purchase of the salt was unconditional, and that after his failure to deliver the salt the plaintiff promised to pay him the difference between the contract and market prices thereof, but never paid it. He denied that the $300 was paid him on account of the salt transaction, but testified that it was the agreed consideration for not bidding on the distillery.

The testimony of William Bergenthal, as to the circumstances under which he paid the defendant the $300 (referring to the time the distillery was sold), is as follows:

"Don't know how many bids; heard two — United States and my brother. Don't know that I heard more. Don't know what all the people came there for. Saw defendant and

had conversation with him on that day. Defendant stood there, and when he saw me he said, 'Now I have a chance, and I am going to get even with your brother,' and he had been looking for that. Before the distillery; we were sitting on a bench. Had been looking for that chance last ten years. I says, 'What is it?' He says, 'He owes me $300 for a salt transaction in Winona.' I says, 'How long ago?' He says, 'About thirteen years ago.' I said, 'Why didn't you see him; he has been here all the time?' He said, 'Well, he would not, but now was the time to get even with him.' I went back and told Lindwurm this, and Lindwurm said he didn't believe that. I said, 'I will go and ask him again, and if he says he owes it to him I will pay it.' Went and asked defendant if it was so; that if coming from my brother in a right way, I will give you that. 'No,' he said, 'I want $500; the interest amounted up to that.' I said, 'I will give you that if you take the $300.' He says, 'All right,' and I gave it to him. Had no check with him — will give the money when we get home; and stepped in the saloon at Roden place, and brother August wrote out the check made to his order, and I signed it."

The foregoing is taken from the printed abstract, which is believed to be substantially correct.

Concerning the alleged indebtedness of the plaintiff to the defendant, and in answer to the question, "Did he ask you to pay it?" the same witness testified as follows: "No, not in those words; said he was going to get even with my brother on account of that salt transaction for $300; looking for a chance, and now was a chance. Asked why he did not sue him when he was here; said he wouldn't sue him. I said, 'If he owed you fair and square, I will pay you $300.' He asked interest. I said, 'No; if you want $300, I will give it to you.' . . . He said interest about $200, and wanted $500. . . . Brother authorized me to pay his debts before he left." There was other testimony of similar import.

A motion for a nonsuit was denied. The jury returned a verdict for the plaintiff for the amount of his claim. The court denied the defendant's motion for a new trial, and rendered judgment pursuant to the verdict; from which the defendant appealed.

*J. J. Orton*, for the appellant.

For the respondent, there was a brief by *Murphey & Goodwin*, and oral argument by *Mr. Goodwin*.

LYON, J. Return was made on the present appeal before a proper bill of exceptions had been settled, and, on motion of counsel for the appellant, by order of this court, the record was remitted to the county court for the purpose of obtaining a further return. The object of the order was to have the bill of exceptions attached to the record and returned, but it was not so expressed in the order. The learned county judge seems to have been in doubt as to the purpose of the order, but by his direction a further return has been made consisting of a large mass of testimony certified by the reporter to be a complete and correct transcript of the testimony given on the trial of this action, together with what purport to be certain questions proposed on behalf of the appellant to be propounded to the jury, and the charge of the judge to the jury. The reporter's certificate was followed by these words: "This was all the testimony."

To the foregoing matter, the judge appended the following certificate:

"The foregoing, from the certificate of the reporter, appears to be all the proceedings had upon the trial of said cause, and if the appellant's prayer for a further return includes and means the foregoing proceedings, the clerk of this court may attach the same to the original bill of exceptions, and make return of the same with the original bill, and return the same to the supreme court in pursuance of the order of said court made the second day of May, 1879. The original or copy of

application not being before me, the substance of the same not being included in the order, I am at a loss to know what return to order the clerk to make, but suppose it to mean the testimony and proceedings had upon said trial, including the charge of the court; and hence the clerk is ordered to return the same as above.

" To which the plaintiff objected, for the reason that no copy of the foregoing testimony and proceedings has been served in this action, and the respondent has not had an opportunity to examine the same; that the order made by the supreme court in said action as to a further return has not been complied with; and that no notice of the settlement or change of the bill of exceptions has been given, as required by law; that respondent appears for the purpose of entering these objections at this time, and for no other purpose, and said order is made, as above, subject to said objections and exceptions."

It is now objected that the alleged bill of exceptions was not properly settled as such — in fact, that it is not a bill of exceptions. The certificate of the judge is very peculiar, and we have had some difficulty in determining whether or not he intended to certify that the testimony returned here was actually given on the trial. The certificate should have been more direct in its terms. However, we cannot think that the judge would order the clerk of his court to send here such a mass of written matter unless he intended so to certify it that it would be part of the record in the case. Hence, without stopping to analyze the certificate, we must hold that the documents to which it is annexed constitute a bill of exceptions in the cause, and that it contains all of the testimony given on the trial.

When the county judge settled and signed this bill, he determined the regularity of the proceedings preliminary thereto, and we cannot review such determination on this appeal. If a bill of exceptions is not properly settled, the remedy is by

motion to the proper court to strike it from the files. This practice was adopted in *Oliver v. Town*, 24 Wis., 512, and in *Sexton v. Willard*, 27 Wis., 465. In each of these cases the bill was defective on its face; but no good reason is perceived why the same practice should not prevail in any case wherein, for any reason, a party desires to expunge from the record what purports to be a bill of exceptions, or to impeach its verity. This brings us to the merits of the case.

The jury were instructed that if the defendant fairly and honestly intended to bid on the distillery, and the $300 was paid to him in consideration that he would refrain from bidding, the contract was an illegal one, and there can be no recovery in the action. Under this instruction the verdict for the plaintiff necessarily negatives the claim of the defendant that the money was paid as the consideration for not bidding at the sale of the distillery. We have, therefore, no concern with that branch of the case. Under the pleadings, evidence and charge of the court, the jury must have found that the money in controversy was paid the defendant on account of the alleged contract for the sale and purchase of salt as claimed by the plaintiff, and that the same was paid by William Bergenthal under a mistake of fact.

All the knowledge William had of the salt transaction, he obtained from the defendant on the occasion of the sale of the distillery; hence, if the money was paid under a mistake of fact, the mistake was produced by the misrepresentations of the defendant to William of the facts of that transaction. If the money was paid by William for the plaintiff under these circumstances, the plaintiff is entitled to recover. Add. on Con., 42. Therefore, the controlling question is, Does the evidence tend to prove that the defendant misrepresented the salt transaction to the plaintiff's agent? If the evidence tends to prove this, the judgment should be affirmed; otherwise, it must be reversed.

The evidence furnishes no reason to doubt that the defend-

ant honestly believed that the plaintiff was indebted to him on account of the salt transaction. He stated to the agent that the plaintiff owed him $500 on that transaction (including interest), but was not asked and did not give the particulars of it. It is quite apparent that he did not assert that he had a legal claim upon the plaintiff for the money; for he refused to sue the plaintiff therefor when that course was suggested by the agent, and he disclosed that the statute of limitations had probably run against the claim twice over. He also disclosed sufficient to inform the agent that the plaintiff did not recognize the validity of the claim and would not pay it. He demanded $500; the agent offered him $300, and he accepted the offer.

It seems to us that the case stands as it would had the defendant said to the agent, " Your brother *Francis* is honestly indebted to me in the sum of $500, principal and interest, on account of a salt transaction between us thirteen years ago. He denies the indebtedness, and will not pay it. I will not sue him for it, because I cannot recover the money by suit. I demand, however, that you pay me for him the amount of my claim, because I believe it is an honest one."

We find in the record no evidence of the misrepresentation of any material fact by the defendant, or that the money was paid through any mistake of fact on the part of the plaintiff's agent. The defendant seems to have disclosed truly all that good faith required him to disclose in the first instance; and if the agent desired to know more of the transaction than was thus disclosed, he should have interrogated the defendant concerning it. His failure to do so was equivalent to saying to the defendant: " You say your claim is an honest one. I do not care to know the particulars of the transaction out of which it arose, or what my brother thinks or has said about it; for I know you cannot recover it by suit, and you assure me that you will not bring suit for it. You demand $500. I will pay you for my brother $300 to settle it, because I am satisfied the claim is honestly made."

We have here, therefore, the case of a disputed claim of $500 against the plaintiff (probably not enforceable by suit, but resting in a moral obligation alone), made in good faith by the defendant, which, with knowledge of all the material facts and without fraud or misrepresentation on the part of the defendant, the agent of the plaintiff, acting for him, compromises and settles by paying $300 in full discharge of it.

This is the case made by the plaintiff's testimony, by which he is bound; and we think that it conclusively appears that the payment of $300 was a valid and effectual compromise of a disputed claim, which neither party can impeach.

Because it appeared from the testimony of the plaintiff that he is not entitled to recover back the money sued for, the motion for a nonsuit should have been granted; or, that being denied, the motion for a new trial should have been granted.

*By the Court.* — Judgment reversed, and cause remanded for a new trial.