Nilson vs. Morse.

Nilson vs. Morse.

*April 19 — May 10, 1881.*

CONTRACTS: EVIDENCE.   *(1, 2) Parol evidence to explain written contract. (3) Evidence of recall of notice.   (4) Construction put on contract by acts of parties.*

CONTRACTS: DAMAGES.   *(5) Measure of damages for refusal to allow work to be done as contracted.*

PRACTICE ON APPEAL to Supreme Court.   *(6) Presumption as to bill of exceptions: Remedy where it is not properly in the record.*

1. Where a written contract is uncertain as to matters affecting the liabilities of the parties, parol evidence of the situation of the parties and of the subject matter is admissible to aid in its construction.

2. Thus, where, by written contract made in August, N. was to pull all the stumps on the land of M. at a certain rate for each pine stump, and the number to be pulled before frost should set in during the following fall was defined, but not the time when the remainder should be pulled, and N. claims that M. was guilty of a breach of the contract in refusing to let him proceed in the following spring to pull the stumps not before removed, while M. claims that, in accordance with the ordinary use of the land, known to N., it was then covered with a growing crop of wheat,

Nilson vs. Morse.

which would have been destroyed by doing the work, and that the contract did not contemplate doing it at that season: *Held*, that it was error to reject evidence offered by M. to show the situation of the land and the use he was making of it when the contract was made, to assist in construing the contract.

3. M. having given N. notice in the spring, not merely to suspend his work until the growing crop should be gathered, but absolutely to quit work, without limitation of time, he was still entitled to show a subsequent recall or modification of such notice, made before N. had quit work or been injured by the notice.

4. Where there is any uncertainty or ambiguity in a written contract, the construction subsequently put upon it by the parties themselves, as evinced by their conduct, may be shown to aid the court in construing it.

5. In case of a contract for doing specific work at a specified price, the measure of damages for a refusal to allow the work to be done is the profit which would have been realized by the contractor if he had been permitted to perform it, and *not* the difference between the contract price and the sum which the contractor actually received from other employments during the time which would have been required for completing the work.

6. Where a bill of exceptions, purporting to have been settled and signed by the trial judge, appears in the record on appeal, respondent's remedy, if he denies that it is properly there, is by motion, either in the court below or in this court, to strike it from the record; the presumption is that the bill was properly settled and signed; and this presumption is not overcome by the mere fact that it was settled and signed after the time prescribed by sec. 2876, R. S.

APPEAL from the Circuit Court for *Manitowoc* County.

The case is thus stated by Mr. Justice TAYLOR:

"*Nilson* brought his action in the circuit court to recover damages of *Morse* for a breach of the following contract:

"'This is to certify that *Tosten Nilson*, of the first part, agrees to pull all the stumps on the land of *N. B. Morse*, clean them, and put them in the fence, and clear the land of all roots, fit for plowing, for which *N. B. Morse*, of the second part, agrees to pay one dollar and five cents ($1.05) for each pine stump; one-half to be paid this year, the balance to be paid in one year from date, or when the stumps are pulled and put in the fence, and the land cleaned. The said

*Nilson* is to take all the flour and feed that his men may need during the time that he may be at the work.   No hard-wood stumps to be counted.   Said *Nilson* is to pull 100 or 150 stumps, at least, and as many more as he can do, before frost sets in this fall.   Said *Nilson* to have pasturage over night for his oxen while at work pulling stumps for the said *Morse.* The stumps to be put on the line fence on the south side of the .lot, and on the railroad track.

  " ' *Manitowoc, Wis., August* 30, 1877.

                                     'TOSTEN NILSON,
                                     'N. B. MORSE.'

  " The complaint alleges that plaintiff entered upon the performance of the contract on his part about the first of September, 1877, upon the land and premises of the *defendant, pointed out by him as his land, and upon which defendant directed the plaintiff to pull the stumps;* that he commenced pulling and cleaning pine and hard-wood stumps, under and by virtue of said contract; and that he pulled, cleaned and put into fence, in accordance with said agreement, 535 pine stumps, .from the time of the date of said contract until April 17, 1878. It further alleges that he was entitled to receive for the stumps so pulled, etc., the sum of $561.74, and that the defendant has only paid him therefor the sum of $285.39, and that there is still due him thereon the sum of $276.35, and interest thereon from April 17, 1878.   It further alleges that on said 17th day ·of April, 1878, there were, on the land so pointed out by the defendant to plaintiff, 730 more pine stumps, which were not pulled or put into fences; that plaintiff, on said 17th of April, .1878, and on divers other days and times between that day and the commencement of this action, was ready and willing and ·offered to proceed, and insisted upon proceeding, with the ·work of pulling, cleaning and putting the remainder of said stumps into fence in accordance with the terms of said agreement; but that defendant, about said 17th day of April, 1878, forbade the plaintiff from entering upon said land for any

purpose, directed him to desist from any further prosecution of said work of pulling said stumps, prevented him from proceeding with said work or doing any further work under and by virtue of said contract, and served upon him a written notice, bearing date March 30, 1878, forbidding him from doing any more work on his land under said contract, or entering upon his land referred to in said contract, from and after said date. The plaintiff then alleges that he has sustained damage by not being allowed to pull, clean and put into fence the remainder of said stumps under his said contract, in the sum of $365, and claims judgment for the sum of $741.38.

" The defendant, in his answer, admits that he made a contract with the plaintiff for pulling stumps, but alleges that a part only of such contract was put in writing, and that the part put in writing was set out in the complaint. He then alleges that it was expressly agreed between the parties that the plaintiff should pull all the stumps he could during the year 1877, clean them and put them in the fence, and prepare the land for cultivation; admits that plaintiff did pull 535 pine stumps from the time of the date of the contract until April 17, 1878; and alleges that they agreed as to the number of stumps pulled, and the amount due therefor, and that the plaintiff received his pay from the defendant for the stumps so pulled, being five dollars in excess of one-half the amount which the plaintiff had earned by pulling said stumps, and that the balance was not due at the time of the commencement of this action, and would not be due until one year from the first day of May, 1878. The answer then alleges that the written contract is silent as to when the balance of the stumps on the land of defendant, not pulled in 1877, were to be pulled, and that it was expressly agreed that the stumps to be pulled, and the place where the same were to be pulled, were to be pointed out by the defendant, and that the remainder of the stumps, after the first year, were only to be pulled as directed by the defendant, and at such reasonable times as the defend-

ant should think proper; 'that a large portion of defendant's
farm is under cultivation, and used for the ordinary purposes
of farming; that the plaintiff, during the year 1878, and prior
to the commencement of this action, insisted upon going upon
the land of the defendant and pulling stumps where it was
ordinarily used for sowing grain and for pasture, and during
that season of the year when the same was required for pastur-
ing purposes, and for sowing and raising grain thereon, con-
trary to the express agreement hereinbefore mentioned; that
when said plaintiff so insisted upon going upon said lands at
such times, the defendant forbade him so to do, for the reason
that the land was needed for the ordinary purposes of farming,
and for the further reason that defendant had not directed
plaintiff to pull said stumps last mentioned, which plaintiff
was then attempting to pull; that at the time of the making
of the contract said defendant told said plaintiff that he, de-
fendant, would not allow said plaintiff to go on and pull all
of the stumps, but that he might pull them as he, said defend-
ant, directed, and that defendant would not direct the pulling
of the stumps upon the land except as the income of the land
should pay for the labor to be bestowed thereon by the plaint-
iff, and that the defendant did not want to hire money to clear
up the farm, but that the profits of the farm should pay for
its improvement — all of which was understood and assented
to by the plaintiff; that defendant had not had an opportunity,
at the time said plaintiff proposed to continue pulling stumps
on said land, to harvest a single crop therefrom, and the farm
had not, therefore, produced anything wherewith to pay for
the pulling of the stumps proposed to be pulled by the
plaintiff; and that the plaintiff well knew, at the time he pro-
posed to go on and pull the stumps on said premises as last
aforesaid, that nothing had been raised or produced on said
farm whereupon the defendant could pay him for pulling said
stumps and clearing the land, which the plaintiff then pro-
posed to go on and do.'

Nilson vs. Morse.

"Upon the trial, the learned circuit judge rejected all evidence offered on the part of the defendant tending to show the situation and relations of the parties at the time the written contract was made, and also all evidence tending to show where and under what circumstances the stumps not pulled in 1877 were to be pulled by the plaintiff. The court also refused to permit the defendant to show that after he had given the plaintiff notice to quit work on March 30, 1878, and before the 17th day of April, 1878, plaintiff and defendant met, and it was then agreed that the plaintiff should go on and pull 85 stumps that had been designated by plaintiff, and that the remainder of the stumps should not be pulled until after the defendant had got in his crops, and that plaintiff was to go on and pull the remaining stumps in the fall. The plaintiff, however, testified, without objection, that after defendant gave him notice to quit, March 30, 1878, defendant told him to go on and finish out the 85 stumps so that he could sow, and plaintiff did go on and finish pulling the 85 stumps, and then he says defendant told him to quit. These 85 stumps, it appears, were the last counted by the defendant and marked for plaintiff to pull, in the fall of 1877. The court also refused to permit the defendant to give evidence tending to prove that after the plaintiff quit work, April 17, 1878, the parties met and agreed upon the amount due plaintiff for the work already done, and that plaintiff received something more than half the amount due him, and agreed that the balance should be paid in one year from the first of May, 1878.

"The court permitted the defendant to give evidence tending to show that after the plaintiff had quit work, and on the 30th of May, 1878, it was agreed between the parties how many stumps had been pulled, and also what amount was then due the plaintiff for pulling the stumps, and that only one-half the contract price was then due. Defendant was also permitted to testify that after the plaintiff had quit work the parties met and settled for the stumps that had been pulled,

and balanced the plaintiff's account; that defendant then paid plaintiff about five dollars more than half the contract price, and it was entered in plaintiff's pass-book; and that plaintiff consented, and said it was all right. The defendant asked the court to instruct the jury 'that if they found from the testimony that after the notice of March 30, 1878, the plaintiff and defendant met and consented to a continuance of the contract, and agreed that the plaintiff should go on and pull stumps on the land pointed out to him in pursuance of said contract, then it is a waiver of the revocation of the contract, and the plaintiff cannot recover.' This instruction was refused. The defendant also asked the court to instruct the jury that the plaintiff could not recover the $261.30 for the stumps already pulled, because by the terms of the contract it was not due until after the commencement of this action. This was also refused.

"The court charged the jury that the defendant terminated the contract and put an end to it after the plaintiff had pulled 535 stumps, which at the contract price amounted to $561.74; that about the time the defendant terminated the contract, he paid plaintiff something more than half the amount, leaving due plaintiff the sum of $261.30; that, the contract having been terminated by the defendant without the consent of the plaintiff, this balance of $261.30, which the defendant had not paid at the time he terminated the contract, became due, and for this amount, with interest thereon at seven per cent. from the time he terminated the contract, plaintiff was entitled absolutely to recover. This instruction was duly excepted to by the defendant."

The court further instructed the jury that, in addition to the $261.30 due for the stumps actually pulled, with interest thereon, they should allow the plaintiff, as damages, the difference between the contract price for pulling the remaining stumps and the sum which it would have cost him to pull them.

Plaintiff had a verdict for $457.76; a new trial was refused; and defendant appealed from a judgment upon the verdict.

For the appellant there was a brief by *H. G. & W. J. Turner*, and oral argument by *W. J. Turner*.

The cause was submitted for the respondent on the brief of *J. D. Markham*.

TAYLOR, J. The learned counsel for the appellant insists that the court erred — *first*, in refusing to permit him to give evidence, showing the circumstances of the parties, and the situation of the defendant's land, at the time the contract was made, for the purpose of aiding in its construction; *second*, in refusing to permit him to show when and under what circumstances it was agreed that the stumps not pulled by plaintiff in 1877 should be pulled; *third*, in refusing to permit him to show that after the plaintiff quit work in 1878 the parties met and settled for the work already done, and that the amount unpaid was not to be paid for one year from May 1, 1878, and that the plaintiff agreed to go on and pull the remaining stumps after the crops were secured in 1878; *fourth*, in refusing to give instructions asked by the defendant, and in giving those excepted to by him.

We think the court should have permitted the defendant to show the situation and condition of his farm at the time the contract was made, and the use he was making of the lands upon which the stumps to be pulled were situated. The contract is entirely silent as to the particular lands of the defendant upon which the stumps were situated which the plaintiff was to pull. The contract says plaintiff was to pull all the stumps on the defendant's land, etc. It in no way locates the land; and if it is to have a broad interpretation, it might mean that plaintiff should pull all the stumps on defendant's land, wherever situated, in or out of the state of Wisconsin, and that plaintiff should pull all the hard-wood stumps without compensation on his land, even though there might not be

one pine stump to forty hard-wood stumps.  Or, if defendant had a farm of 200 acres, and had one field of 10 acres on which there was a large number of pine stumps, and the rest of the 200 acres was covered with hard-wood stumps, defendant might insist that plaintiff should pull all the hard-wood stumps on his 200 acres, as well as the pine stumps on the 10 acres, but that he should be paid for the work only the sum which the pine stumps would come to at one dollar per stump. No court would, however, be inclined to give such a broad construction to the contract, but would look outside of the contract, to the circumstances attending the making of it, for a construction of the same.  Under this contract it was certainly competent to show that at the time the contract was made, or before, the defendant had pointed out to the plaintiff that he owned a certain field or farm upon which there were pine stumps mixed with hard-wood stumps, and that he desired these fields or that area cleared of the stumps, and that subsequently this contract was made.  This evidence would give meaning to the words "on the land of *N. B. Morse*," and limit the contract to these lands; and under it the defendant would not be allowed to insist that the plaintiff had agreed to clear the stumps from other land which he owned, and of which the plaintiff had no knowledge at the time he made the contract.  This is just what the plaintiff insists was done in this case, and he was properly allowed to testify, against the objection of the defendant, that before the writing was made defendant pointed out the land on which the stumps were situated which he agreed by his written contract to pull. He makes no claim that he agreed to pull any stumps except those on the land so pointed out by the defendant, and he complains only that defendant refused to permit him to pull all the stumps on such lands.

The plaintiff could make no case against the defendant at all without going outside of the contract and showing the circumstances under which the contract was made, in order to

Nilson vs. Morse.

apply and interpret the contract, so as to lay a foundation for showing a breach thereof by the defendant, and the extent of his damages. It seems to us the defendant should have been accorded the same privilege of showing the condition of his farm at the time the contract was made, for the purpose of aiding the court in determining when the stumps, not agreed to be pulled in the fall of 1877, should be pulled. Certainly the contract does not fix any time. But it is insisted by the plaintiff that it must be construed to give the plaintiff the right to go on in the spring of 1878 and complete the pulling of all the stumps on the land pointed out as coming under the provisions of the contract. Whether such a construction should be given to the contract — the contract being silent on that point,— would depend very much on the use the defendant was putting the land to at the time. It would hardly be insisted that if the field on which the stumps remained unpulled in 1877 had been sown in the fall of 1877 with winter wheat, the contract should be interpreted so as to allow the plaintiff to insist on pulling the stumps in the spring and thereby destroy the whole crop. If, in the common and ordinary use of his land by the defendant, the land upon which the stumps were not pulled in the year 1877 was necessary for pasturage, meadow or cultivation, it was competent for him to show that fact, as a circumstance bearing upon the construction of the contract as to the time of its performance. Had all these matters been before the court, it might well have construed the contract as to the stumps remaining after the fall of 1877 as only authorizing the plaintiff to pull them at such time or times as would not unreasonably damage the defendant in the ordinary use of his farm. It would seem that the plaintiff himself so construed the contract. In his evidence he says the reason why defendant ordered him to quit work was because he wanted to sow his land, pasture it, and cut hay off it; and he says he replied that he would rent the field from him so as not to spoil the farm. The plaintiff

seemed to understand the contract as not authorizing him to pull the stumps at a time when it would unnecessarily injure the defendant in the use of his land. In the light of the facts and circumstances which the defendant might have presented to the court, if he had been permitted to prove them, it is not clear that the written contract would have been construed to authorize the plaintiff to go on with his work in the spring of 1878 and continue the same without interruption until the work was completed, irrespective of any damage which might have resulted to the defendant from that way of doing the work. That evidence of this nature is competent, even where the whole contract is in writing, is well settled by the decisions of this court. It was said by the late learned chief justice, in the case of *Lyman v. Babcock*, 40 Wis., 503–512, quoting from Greenleaf on Evidence: " As it is a leading rule in regard to written instruments that they are to be interpreted according to their subject matter, it is obvious that parol or verbal testimony must be resorted to in order to ascertain the nature and qualities of the subject to which the instrument refers. Evidence which is calculated to explain the subject of an instrument is essentially different in its character from evidence of verbal communications respecting it. Whatever, therefore, indicates the nature of the subject is a just medium of interpretation of the language and meaning of the parties in relation to it, and is also a just foundation for giving the instrument an interpretation, when considered relatively, differing from that which it would receive if considered in the abstract." See the cases cited in said opinion, and also *Monitor Iron Works v. Ketchum*, 44 Wis., 126.

The learned counsel for the plaintiff does not insist that the contract must necessarily be construed to authorize the plaintiff to continue his work until completion, in the spring and summer of 1878, irrespective of the consequences to the defendant, but that the question of the construction of the contract upon that point was wholly immaterial in determining

the issues between the parties.  He insists that the defendant, by his notice of March 30, 1878, put an end to the contract absolutely, without any reference to the time when the work should or might be done under the contract; that he did not forbid the plaintiff from going on and completing the work at that time, but forbade his doing it at any time, either presently or at any future time; and that the defendant did not claim to stop the plaintiff in his work because he was doing it at an unseasonable time, and thereby unnecessarily damaging him in the enjoyment of his farm.

There is great force in the argument, and if the defendant did forbid the plaintiff without cause to continue the work at that time or at any other time, and there was no withdrawal on his part from that position, it would be quite immaterial what the construction of the contract should be as to when the work could be lawfully done by the plaintiff.  Looking alone at the written notice to quit, given by the defendant, bearing date March 30, 1878, the refusal of the defendant to permit the plaintiff to do any further work under the contract would be absolute; but there is evidence showing that the plaintiff did work after the notice to quit was given, with the consent of the defendant.  The plaintiff admits this in his evidence, but he says that the defendant told him to quit when he had completed pulling certain stumps which had been theretofore marked for pulling by the plaintiff.  It also appears that the defendant offered to show that after the written notice was given, and whilst plaintiff was still at work, he told him he did not intend to terminate the contract, but to stop his work until after he got his crops off, and that he could then go on and pull the remainder of the stumps, and that the plaintiff assented to that arrangement.

The evidence offered on the part of the defendant we think should have been admitted, under the pleadings, as tending to show that, notwithstanding the written notice to quit was absolute and unqualified, still the plaintiff was informed before he

quit work, and before he had suffered any injury from such notice, that it was not intended as an absolute refusal on the part of the defendant to prevent the plaintiff from performing the contract, and that he was at liberty to perform the same at a proper and seasonable time. This evidence was, it seems, ruled out because it was supposed not to be admissible under the pleadings. We think it was clearly admissible under the pleadings. The plaintiff alleges that the defendant had forbidden him absolutely, and without assigning any cause, from doing any further work under the contract, and sets out in his complaint the written notice of the defendant of March 30, 1878. The·defendant, in his answer, does not deny that he gave the written notice as alleged in the complaint, but alleges "that the plaintiff insisted upon going on and pulling the stumps at a time when the land was ordinarily used for sowing grain and for pasture, and during the season when the same was required for pasturing purposes and for sowing and raising grain thereon, contrary to the express agreement of the parties; and that, because plaintiff so insisted upon going on with the work, he forbade him, because the land was needed for the ordinary purposes of farming." Under this state of the pleadings, we do not think the defendant was estopped from showing that he notified the plaintiff, after the giving of the written notice, of the reason why he gave the same, and that he did not mean by such notice to absolutely refuse to permit him to do the work at a proper season. Such explanation of the written notice, being given before the plaintiff had acted upon it and quit work, and before he had sustained any damage from such notice, was a withdrawal of the absolute notice to terminate the contract contained in the written notice; and thereafter the plaintiff would not be justified in abandoning the contract, relying upon such written notice as his justification therefor.

Whether the learned circuit judge erred in refusing to permit the defendant to show that it was expressly agreed be-

tween the parties that the stumps not pulled in 1877 should not be pulled until after the crops were taken off the lands in 1878, is matter of considerable doubt, and need not be decided in this case. But as the contract was silent upon this subject, we think it was competent for the defendant to show that such was the construction given to it by the parties, and that the court erred, therefore, in refusing to let the defendant prove that after the plaintiff quit work, in 1877, the parties met and settled for the work already done, and agreed upon the amount then due the plaintiff, and the time when the balance would become due, and that the remaining stumps were to be pulled after the crops were secured. This evidence would show, or at least tend strongly to show, what construction the parties themselves put upon this part of the contract. The contract being silent and uncertain on that point, the construction given to it by the parties should have been received in evidence with the other circumstances in the case, as tending to show the construction which ought to be given to the contract. If the court received this evidence, and if the defendant had satisfied the court by his proofs that after plaintiff quit work in the spring of 1878 he made a settlement with him for the work done, and received part payment, and agreed that the balance should be paid one year from that date, and that the remainder of the work should not be done until after the crops for the year were secured, and if the force of that evidence had not been broken by other evidence showing that such settlement and postponement of the remainder of the work had not been agreed to because such was understood to be in accordance with the original contract between the parties,— it is probable the court would have had no difficulty in construing the original contract between the parties in conformity to such settlement between them.

Where there is any uncertainty or ambiguity in a written contract, the construction put upon it by the parties themselves is always received as evidence tending to aid in its con-

struction. In such cases it is the intention of the parties which the court seeks to arrive at, and this intention is best shown by the construction which the parties have placed upon it themselves. It is true, the intention of the parties cannot avoid or change the meaning of a written contract when the language used is clear and certain, but only when the language is uncertain and doubtful. 2 Parsons on Contracts, 494, 499. The contract in question is vague, uncertain and of doubtful meaning in many respects, especially as to the time when payment for the work should be made, and when the work should be done, except that which was agreed to be done in 1877; and upon these doubtful and uncertain points the construction which the parties themselves gave to it would be the best evidence of the true meaning of the same. This evidence should also have been received by the court for the purpose of arriving at the real meaning of the contract upon the issue as to whether there was anything due the plaintiff at the time this action was commenced, as well as upon the question whether the defendant had committed a breach of the contract by refusing to permit the plaintiff to proceed with his work further until after the crops for 1878 had been secured.

The refusal of the court to give the instructions requested by the defendant, and the instructions given, were consistent with the theory upon which the learned circuit judge tried the action, except, perhaps, as to the charge that the plaintiff had an absolute right to recover the $261, the balance of the contract price for the stumps pulled, with interest. The court seems to have tried the case on the theory that the written contract was clear in all its provisions, and that by its terms the plaintiff was authorized to go on with his work and complete the same as rapidly as he could in the spring of 1878, without any regard to the injury he might do to the crops, meadow or pasture lands of the defendant; that the defendant had put an end to the contract absolutely by the notice of March 30, 1878; and that consequently the only question for

the jury was the amount of damages the plaintiff had sustained. The errors in the case are those occurring upon the trial before the case was submitted to the jury, and not in submitting it to the jury upon the case as the same was permitted to be made by the court.

We are inclined to think the rule of damages was properly stated by the court; that the rule in case of a breach of contract for doing a specific work for a specified price is the profit the person would have realized had he been permitted to perform the work, and not the difference between the contract price and the sum the contractor actually received from other employments during the time he would have been employed in completing the work. The rule applicable to contracts for personal services does not apply to a case of this kind. 3 Parsons on Contracts, 781; *Masterton v. Mayor of Brooklyn*, 7 Hill, 61; *P., W. & B. R. R. Co. v. Howard*, 13 How. (U. S.), 307, 344; *Fox v. Hardin*, 7 Cush., 516; *N. Y. & H. R. R. Co. v. Story*, 6 Barb., 419.

The learned counsel for the respondent insists that this court ought not to consider the bill of exceptions in the case, for the reason that it appears to have been served on the respondent's attorney more than sixty days after service of written notice of the entry of judgment. We cannot consider that question upon the hearing of the appeal. If the respondent claims the bill was not properly in the record, he should have moved either in this court or the court below to strike the same from the record. See *Bergenthal v. Fiebrantz*, 48 Wis., 435; *Oliver v. Town*, 24 Wis., 512; *Sexton v. Willard*, 27 Wis., 465. The bill, having been signed and settled by the trial judge, must be deemed to have been properly settled and signed; and the mere fact that it was settled and signed after the time fixed by section 2876, R. S., does not necessarily show that it is improperly in the record. This court has repeatedly held that a bill may be served and settled after the time limited by said section. And the bill appearing in the record

properly signed by the circuit judge, this court must presume that he allowed it to be served and settled out of time for sufficient reason appearing to him.

For the errors of the court in excluding the evidence offered by the defendant, the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.