KLUETER, Respondent, vs. JOSEPH SCHLITZ BREWING COM-
PANY, Appellant.

*September 14—October 4, 1910.*

*Contracts: Construction: Ambiguity: Parol or extrinsic evidence af-
fecting writing.*

1. Oral testimony is not admissible to contradict or vary a written
   contract, but, nevertheless, is admissible to apply the contract
   to the subject with which it deals and to show facts and cir-
   cumstances characterizing its making, where—by reason of am-
   biguity either in the language or the writing itself, or therein
   when applied to the subject with which it deals—that is reason-
   ably required to enable the court to read the writing in the light
   of such characterization and thus discover what the parties in-
   tended to express therein.

2. A written contract is to be held to mean what the parties thereto
   intended it should, if such meaning can be found, by aid of
   rules for construction, within the reasonable scope of its lan-
   guage.

3. The language of a written contract is not open to construction
   unless its meaning is ambiguous, and then, by the aid of such
   rules, it must speak for itself, the words, however, not being ex-
   tended beyond their reasonable scope, in the light of the char-
   acterizing circumstances, in order to effect an intention not
   fairly expressed therein.

4. When the language of a written contract is plain it is not open
   to construction, but though plain, viewed exclusively, if not
   plain, when applied, by the aid of oral evidence or otherwise
   to the subject with which it deals, extrinsic evidence showing
   the circumstances characterizing the making of the contract, is
   permissible for the purpose of clearing up the obscurity.

5. The rule as to construction of contracts that "where the meaning
   is plain and leads to no absurd consequences there can be no
   reason for refusing to admit the meaning which the words nat-
   urally present," suggests the propriety of extrinsic evidence to
   apply the contract to the subject with which it deals, and if
   manifest unreasonableness thus appears, the propriety of evi-
   dence of the circumstances characterizing the making of the
   writing to aid in clearing up the obscurity.

6. Extrinsic evidence is not admissible for the direct purpose of cre-
   ating ambiguity in the language of a written contract which is
   plain, viewed exclusively, but that does not militate against the

rule that extrinsic evidence is proper to apply a contract, plain in its literal sense, to the subject with which it deals, and, if the effect is to disclose ambiguity, like evidence to show the circumstances characterizing the making of the contract.

7. From the foregoing the rule results that ambiguity in a written contract calling for construction may arise as well from words plain in themselves but uncertain when applied to the subject matter of the contract, as from words which are uncertain in their literal sense.

8. The rule that contracts which are plain are not open to construction, and the one that evidence of conversations between parties respecting the contract prior to and inclusive of the making thereof, are not admissible to explain it, and the one that extrinsic evidence is not proper to vary or contradict a written contract, all harmonize with the rule that—where a contract, though plain in its literal sense, is uncertain, when applied by oral evidence or otherwise to the subject with which it deals— such evidence is proper to show the circumstances characterizing the making of the contract in aid of its construction, which latter rule is a logical deduction from the basic one that "where a contract is plain and leads to no absurd consequences it must speak for itself," and otherwise it may speak in the light of the circumstances under which it was made.

9. Where a conversation, had at the time of making a written contract, relates to some condition with reference to which it was made, and such conversation is referred to in the writing, without specifying such condition, so as to make it a part of the contract, then evidence of such conversation to the extent of showing such condition, is within the rule that extrinsic evidence characterizing the making of a contract is admissible in aid of construing it, in harmony with the rule that evidence of mere conversations between parties in making a written contract, inclusive of the final closing of it, is not admissible to explain it.

10. The rule that—when a contract is ambiguous, viewed in the light of the subject matter with which it deals, though plain in its literal sense, it may, by aid of extrinsic evidence showing the circumstances characterizing its making, be read very different from its literal sense, so long as the reasonable scope of its words be not exceeded, if necessary to give effect to the purpose expressed and intended—does not involve any modification of the contract but "has relation to the application of the language used to the subject within the contemplation of the parties as represented by the situation then existing and the surrounding circumstances, which it may be assumed they then had in view."
    [Syllabus by MARSHALL, J.]

Klueter v. Joseph Schlitz Brewing Co. 143 Wis. 347.

*Per* BARNES, J., *dissenting:*

1. The written contract in this case, so far as it directed the shipment of ice from M. to certain points "via Ill. Cent. R. R.," which railroad extended from M. to those points, was not ambiguous, although said railroad did not reach the loading place of the ice in M. and although other shipments were directed to be "via" other railroads which did not reach M. at all.

2. The fact that the contract stated that the orders for shipment of the ice were sent "as per" a former conversation, did not render parol evidence admissible to show a prior agreement for shipment in some other way than that definitely and unambiguously stated in the writing.

3. Conversations leading up to the making of a written contract are admissible to explain an ambiguity in the writing, but cannot be shown to import ambiguity into an otherwise unambiguous contract.

4. The mere fact that a contract may appear unreasonable to this court in view of events which have transpired since it was made, or even in view of the situation of the parties when it was made, is not a sufficient reason for holding the contract to be ambiguous.

5. Where a contract does not express the true agreement of the parties, its reformation should be by appropriate action in equity, not by importing ambiguity into the contract and then interpreting it to mean something different from what its words plainly imply.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action to recover on contract a balance claimed to be due on a sale of ice.

The complaint is to this effect: Plaintiff contracted to sell defendant ice at thirty cents per ton delivered on cars on the Chicago & Northwestern Railway at Madison, Wisconsin, and then shipped as directed by defendant and at its expense. Pursuant to such contract, in March, 1909, plaintiff delivered ice free on board on such road which was in due course received by defendant at destinations as ordered by it, whereby it became indebted to plaintiff in the sum of $696.43, which became due April 1, 1909, but has not been paid. Judgment was demanded accordingly.

Defendant thus counterclaimed: Defendant's agent, Campbell, under only special authority to secure prices on ice at Madison, Wisconsin, to be shipped to points in Illinois, informed his principal that it could obtain ice of plaintiff, free on board cars at such point, for thirty cents per ton. Thereupon, and on March 2, 1909, it gave plaintiff an order in writing to ship specified quantities of ice to specified places over the Illinois Central Railroad. Pursuant thereto plaintiff sent defendant the quantities of ice ordered, but over the Chicago & Northwestern Railway, rendering it necessary for defendant to pay for freight charges $418.98 in excess of what it would have cost to ship the ice over the Illinois Central as directed. Such road reached Madison so the ice could have been shipped as ordered. Plaintiff at no time before accepting the order made any complaint as regards shipping specifications.

Indebtedness to the amount of $277.45 was admitted and judgment tendered therefor.

Plaintiff replied that he informed defendant's agent, Campbell, he would furnish ice at thirty cents per ton, loaded on cars on the track of the Chicago & Northwestern Railway Company; that the latter could make his own agreement with the agent of that company; that they visited such agent, at which time Campbell did make such arrangement and then contracted in defendant's behalf for ice to be loaded on the Chicago & Northwestern Railway Company's track at Madison; that in March thereafter plaintiff received from Campbell orders for the ice in question, which was loaded and shipped out as per the understanding with him.

There was evidence tending to show these to be the facts: Campbell had a conversation with plaintiff, as claimed in the reply. He was informed that ice would have to be loaded on the Northwestern track and shipped out under agreement with the agent of that road. The Northwestern track, not the Illinois Central track, reached the point for loading.

Cars of the Illinois Central Company could have been, without extra charge, placed at such loading point and delivered over the Northwestern track to the Illinois Central Railroad Company at Madison, but such method of handling the ice was not as satisfactory to plaintiff as shipping out over the Northwestern to the regular junction point with the Illinois Central Railroad, as was done. After Campbell had been informed of the price for ice to be shipped in that way, he, in defendant's name, gave a written order, pursuant to which the shipments in question were made, which order, so far as relates to this case, is as follows:

"Klueter Ice Co., Madison. As per your conversation with Mr. Campbell to supply ice at the rate of thirty cents per ton (30), we herewith send you the following orders to be shipped at once;" then followed specifications of the amounts to be shipped to specified points, followed by the words "Via Ill. Cent. R. R.," the whole concluding with language not material to the controversy and signed, "Yours truly, *Jos. Schlitz Brew. Co.,* Campbell."

Evidence was permitted tending to establish that the term "As per your conversation," etc., referred to the fact of Campbell having been informed, in a conversation with plaintiff, that the price for the ice was made on condition of its being shipped out over the Northwestern Railway; that shipments would necessarily start on the Northwestern road as only the Northwestern Company had a track reaching the loading place,—such facts being claimed to be material on the question of the meaning of the term "Via Ill. Cent. R. R." Evidence of the sort indicated and other evidence as to the meaning of such term, was permitted under objection, defendant claiming that the order was unambiguous, plainly requiring shipments over the Illinois Central road, and plaintiff claiming that it was ambiguous, viewed in the light of the circumstances under which it was made, and that such circumstances showed that shipment over the Northwestern road, so far as

practicable, and then by way of the Illinois Central road, was contemplated.

The case was submitted to the jury, resulting in the following special verdict: (1) Plaintiff stated to Campbell, in substance, before or at the time the contract was made, that all ice would have to be forwarded out of Madison over the Chicago & Northwestern Railway. (2) Campbell gave the order for the ice with that understanding. (3) He had apparent authority to make the contract. (4) The words of the order did not call for shipment of ice out of Madison, Wisconsin, on the Illinois Central Railroad to points of destination.

Judgment was rendered on the verdict in accordance with the prayer of the complaint and defendant appealed.

For the appellant there was a brief by *Aylward, Davies, Olbrich & Hill,* and oral argument by *C. N. Hill.*

For the respondent there was a brief by *Bashford & Welton,* and oral argument by *C. R. Welton.*

MARSHALL, J. The first error assigned is that the contract was in writing, therefore parol evidence thereof was improperly admitted.

It may well be admitted, for the purposes of this case, that the contract was in writing. The trial court, as we understand the record, so held and admitted evidence to aid in construing the language used in the paper.

It is argued at considerable length that the agreement is unambiguous, looking at the words thereof only, and that there is no room for operation of rules for construction. It seems to be thought that, unless ambiguity can be discovered in the language of the paper, looking at that only, it must, regardless of circumstances, be taken in its literal sense as expressing what the parties agreed to. There is no such rule, though it may be there is room for one to be misled in respect to the matter as he reads the numerous discussions found in

the books on the subject, unless he carefully notes differences in situations treated.

The very familiar rule is often stated and applied that oral testimony is not admissible to contradict or vary a written contract.   It is perfectly consistent with that other rule, likewise often stated and applied, that oral testimony is admissible for the purpose of applying the contract to the subject with which it deals, and, in case of ambiguity then appearing, to establish the facts and circumstances under which the agreement was made in order that the language thereof may be read in the light of the environment at the time the parties chose such language to express their intention.

It is said that, when the language of a contract is plain, it is not open to construction.   That is true in the general sense, but, unless viewed broadly, it does not convey accurately the full scope of the field where rules for construction are applicable.   The words of a contract, in themselves, may be plain, yet when applied to the situation with which it deals, not plain, the literal sense leading to such unreasonableness as to suggest that the parties probably did not so intend.   In so applying the contract oral testimony is generally necessary and permissible to the end that the full scope of the situation dealt with may be observed.   As to when the language of a contract, in its literal sense, is to be taken as expressing the intention of the parties, is correctly indicated by Vattel's rule which has been often cited by this and other courts: "When the meaning is evident, *and leads to no absurd conclusions,* there can be no reason for refusing to admit the meaning which the words naturally present."   Note the language "when the meaning is evident."   The meaning is not evident when, if looking at the subject matter, it is so unreasonable as to appear unlikely that the parties so intended.   To enable one to read the contract in the light of the subject matter and the effects and consequences, obviously evidence of facts and circumstances, not mere conversations, leading up to and

concurrent with the making of the contract, is often neces-
sary.    One of the elementary rules found in 1 Greenl. Ev.
(15th ed.) § 286, and often cited by this and other courts,
covers this subject.    It is phrased thus:

"As it is a leading rule, in regard to written instruments,
that they are to be interpreted according to their subject mat-
ter, it is obvious that parol or verbal testimony must be re-
sorted to, in order to ascertain the *nature and qualities of the
subject,* to which the instrument refers.    Evidence which is
calculated to explain the subject of an instrument is essen-
tially different in its character from evidence of verbal com-
munications respecting it.    Whatever, therefore, indicates
the nature of the subject, is a just medium of interpretation
of the language and meaning of the parties in relation to it,
and is also a just foundation for giving the instrument an in-
terpretation, when considered relatively, different from that
which it would receive if considered in the abstract."

In view of the elementary rule stated this court has said
many times—and in perfect harmony with the idea that con-
tracts which are plain are not open to construction, and in
harmony with the idea that parol evidence is not admissible
to contradict or vary a written contract, and in like harmony
with the idea that mere conversations between parties re-
specting the contract leading up to and inclusive of the mak-
ing thereof, are not admissible either to vary or explain it;
*Steele v. Schricker,* 55 Wis. 134, 143, 12 N. W. 396,—am-
biguity calling for construction may as well appear from
language clear in itself, but leading to some absurd result
when applied literally to the situation with which it deals, as
from uncertainty of meaning upon its face.    *Corbett v. Jo-
annes,* 125 Wis. 370, 104 N. W. 69.    When it is said,—
where there is ambiguity in a contract, either in its literal
sense, or when it is applied to the subject thereof, evidence of
the circumstances under which the contract was made is
proper to enable the court, in the light thereof, to read the
instrument in the sense the parties intended, if that can be

done without violence to the rules of language or of law, as in *Johnson v. Pugh,* 110 Wis. 167, 170, 85 N. W. 641, and, in effect, in many other cases decided by this court, and in *Nash v. Towne,* 5 Wall. 689; *Merriam v. U. S.* 107 U. S. 437, 2 Sup. Ct. 536, and many of the federal cases, and likewise in the books quite generally,—we see only the logical application of the rule that "when a contract is plain *and leads to no absurd consequences,* it must speak for itself, but when otherwise, *it may speak in the light of the circumstances under which it was made.* Evidence of such circumstances is in no sense, under such rule, received to contradict or vary the contract, but rather to enable the court to say what the language of the agreement means according to the intention of the parties. In that respect such language cannot be twisted out of its ordinary meaning to the extent of going beyond the reasonable scope of the words. The meaning, in the ultimate, must be found in the language the parties used. To that extent their intention can be effectuated however much the literal or plain ordinary sense of the words may be departed from.

True, the distinction sometimes is so shadowy between application of the rule, that "oral conversations had between the parties to a written contract" before and at the time of the making thereof "cannot be received as explanatory of the writing," and the rule that the contract may be applied to its subject matter by oral evidence, as in *Nilson v. Morse,* 52 Wis. 240, 9 N. W. 1, and many other cases, and any ambiguity thus disclosed explained by resort to such evidence of the facts and circumstances characterizing the making of the agreement—that one is liable, at least without careful analysis, to think there is a conflict,—as in case of some term having been used in the contract, reasonably susceptible of either of two meanings, and proof was held proper to show,—by what the parties said when the agreement was made,—that they attributed thereto a particular meaning. *Ganson v. Madi-*

*gan,* 15 Wis. 144; *Weber v. Illing,* 66 Wis. 79, 27 N. W.
834; *Wenger v. Marly,* 135 Wis. 408, 116 N. W. 7; *Burton
v. Douglass,* 141 Wis. 110, 123 N. W. 631.    But in each in-
stance the fact that the parties contracted with reference to
the particular meaning, was treated as a circumstance, within
the rule that the circumstances characterizing the making of
a contract may be shown to aid in construing it, that other
rule being fully appreciated, that mere verbal communications
respecting a contract had at the time of, or prior to the mak-
ing thereof, are no such characterizing circumstances of such
making as to render proof thereof proper for purposes of
construction.    It is believed that the ideas in mind in the
numerous cases which might be referred to, making, in one
view, seemingly two lines, as suggested in *Burton v. Douglass,*
*supra,* substantially all harmonize.

The subject treated was reviewed at some length by this
court in *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661, and,
thinking to minimize seeming difficulties in the application
of rules for construction, the court said:

"Parol evidence to vary the terms of a written contract is
one thing; such evidence to enable the court to see what the
parties to a contract intended to express by the language
adopted in making it, is quite another thing.    The former is
not permissible. . . . The latter is permissible and is often
absolutely essential to show the real nature of the agree-
ment. . . . Both rules are elementary and do not conflict in
the slightest degree with each other.    One prevents a written
contract from being varied by parol evidence either in regard
to what was said at the time it was' made or prior thereto; the
other aids in determining what the contract is when its lan-
guage, either in its literal sense or as applied to the facts, is
obscure.    The one is a rule to preserve the contract as ex-
pressed in the writing; the other is a rule of construction to
determine what the contract, as expressed, is, it being kept in
mind that the mutual intention of the parties, so far as the
same can be ascertained, governs within the reasonable mean-
ings of the language they chose to express it; and that rules of

construction to discover it are not to be resorted to unless there is some ambiguity to be cleared up. A failure to keep in mind the wide distinction between varying a contract by parol evidence and resorting to such evidence in aid of its construction often leads to error."

We might well add to the foregoing, as a conclusion evolved from the logic of Vattel's rule, so often referred to, and the general application of it: Since a contract may be uncertain in the words themselves when applied to the subject matter thereof though not otherwise uncertain, parol evidence to aid in making such application is proper. Such evidence for that direct purpose is one thing, while evidence merely to create ambiguity is quite another. The former is admissible; the latter is not. That does not militate against the rule that if the legitimate effect of the application is to disclose ambiguity, it opens the door for construction, including in aid thereof, introduction of evidence of the circumstances characterizing the contract and in view of which it was made. Thus it is said: Courts may ignore the literal sense of words where there is no uncertainty of expression (in the words by themselves) to clear up obscurities and avoid absurd consequences. *State v. Railway Cos.* 128 Wis. 449, 108 N. W. 594. It is only where the words are "plain, both in themselves and when applied to the subject with which they deal," that they "must be taken according to their ordinary import," no other meaning being added thereto or taken therefrom. *Huber v. Martin,* 127 Wis. 412, 429, 105 N. W. 1031, 1135. Otherwise, "The contract may be read very different from its literal sense" "so long as its reasonable scope is not departed from, if necessary to give effect to what the minds of the parties really met upon. That does not involve any modification of the contract," but, as said in *Zimmer v. Settle,* 124 N. Y. 37, 42, 26 N. E. 341, "has relation to the application of the language used to the subject within the contemplation of the parties as represented by the situ-

ation then existing and the surrounding circumstances, which it may be assumed they then had in view."

Applying the foregoing to the contract in question, ambiguity is readily observed. The language: "To be shipped at once to," etc., "Via Ill. Cent. R. R.," by itself would indicate that shipments from the seller's loading point to the named destination were contemplated. But the situation dealt with by the writing, as disclosed by legitimate evidence, is that the Illinois Central Railroad did not reach the loading place at all, so the transit, necessarily, had to commence on the Chicago & Northwestern Railway, which, only, reached such loading place. Again, though not indicated in the statement of facts, the calls for shipments to various points "Via Ill. Cent. R. R." were associated with calls for shipments "Via Wabash R. R." and shipments "Via A., T. & S. F. R. R.," neither of which roads reached anywhere near the contemplated loading place, showing, quite clearly, that "via" any particular road, where such road did not reach the loading point, was not used in the literal sense. That situation could only be made to appear by evidence *aliunde* the writing. When disclosed, ambiguity in the contract appeared at once. So it became necessary to learn the meaning of the language in view of the situation.

If there were nothing suggesting ambiguity but the circumstance mentioned, "Via Ill. Cent. R. R." might mean by way of that railroad so far as practicable, and otherwise by way of the only road reaching the loading point, to wit, the Northwestern road. But the obscure words refer back to and are characterized by the opening words of the writing, "As per your conversation with Mr. Campbell to supply ice at the rate of thirty cents per ton," etc., "we herewith send you the following orders," etc. On the face the term "As per your conversation," etc., might refer to the mere price for the ice, suggesting that the whole conversation was embodied in the writing, or quite as well refer to stated condi-

tions in the conversation upon which ice would be furnished
at thirty cents per ton, not incorporated in the writing.    In
that there is ambiguity solvable only by proof of what the
conversation in fact related to, and if to conditions of the
price being as stated, further proof of such condition.    In
that sense the subject matter of the conversation is a charac-
terizing fact or circumstance, and the stipulated condition
likewise.    Such facts or circumstances being a part of the
environment in which the parties acted, were subjects of
proof by parol evidence, within the rule above stated, and
consistent with the other rule that parol evidence of conversa-
tions between parties respecting the contract had at the time
of the making thereof are not admissible.    When such con-
versations result in some matter of fact with reference to
which the contract is made, either as evidenced in the writing,
as in this case, or by the use of some term of double meaning
pursuant to an agreement as to the particular one in mind,
as in *Burton v. Douglass,* 141 Wis. 110, 123 N. W. 631; *Gan-
son v. Madigan,* 15 Wis. 144, and similar cases, then, neces-
sarily, evidence to prove the conversation as a fact is per-
missible, not to show the meaning of the contract directly, and
not at all to vary or contradict, but to establish the fact or
circumstance, in the light of which the contract was made.
Here the parties, in the writing itself, made the conversation
referred to and the condition, as the jury in effect found, upon
which the ice would be furnished at thirty cents per ton, cir-
cumstances necessarily referable to in order to determine
what meaning the language of the writing was intended by
both parties to express.

It follows that errors assigned on the admission of evidence
to prove the conversation referred to in the writing must be
overruled.    The evidence tended to show that, in such conver-
sation, the price of thirty cents per ton was made on condi-
tion of the ice being forwarded out of Madison over the Chi-
cago & Northwestern Railway, and that reference to such con-

versation was made to thereby make such condition a part of the contract, which it might well do without contradicting the term "Via Ill. Cent. R. R." or enlarging it beyond its reasonable scope and that of similar terms several times used in the paper.

The disputed questions of fact involved in construing the contract being found in respondent's favor, upon evidence which was competent, as we have seen, the conclusion which resulted in the judgment followed necessarily.

The treatment of this case has been quite general, since substantially all appellant's complaints turn on whether the contract is ambiguous, and whether ambiguity in an agreement calling for construction can be legitimately disclosed by applying the writing by aid of evidence *aliunde* to the situation with which it deals, when, looking at the particular vital words themselves, there is no ambiguity, and whether a conversation had prior to, or at the time of making the writing, may be so referred to therein as to make stipulations and conditions thereby made and in the light of which the writing was drawn, fall within the field of circumstances provable in aid of construction. We have been constrained, in the light of familiar principles, to resolve such propositions in respondent's favor.

*By the Court.*—The judgment is affirmed.

The following opinion was filed October 22, 1910:

BARNES, J. (*dissenting*). I desire to record my views on some matters treated in the opinion of the court, without indulging in any lengthy statement of the reasons therefor.

1. I think there was no ambiguity in the writing in so far as it related to the shipments involved in this suit. The Illinois Central Railroad extended from Madison to the points at which the ice was to be delivered. The plaintiff was directed to ship the ice from Madison to these points "via" that line

of road. Manifestly, he did not do so, but instead relied on the construction placed on the writing by the agent of a rival line of road. The mere fact that the word "via" was not advisedly used in connection with the shipment of other cars does not furnish a sufficient warrant for the conclusion that it was inadvisedly used in connection with the shipments in question.

2. If the writing stated definitely, as I think it did, that the shipments should be made over the Illinois Central from the point of origin to that of destination, the fact that it referred to a prior oral conversation would not admit of parol evidence to show a prior agreement was made to the effect that the shipment should be made in some other way. Where the subject of the oral conversation is definitely covered in the subsequent written agreement, reference to the fact that a verbal talk was had does not take the writing out of the rule and permit one of the parties to testify to an entirely different contract. Nearly all contracts are the result of verbal negotiations, and reference thereto is immaterial so long as it is apparent that it was not the intention of the parties that some part of the agreement should rest in parol.

3. It is said in the opinion:

"To enable one to read the contract in the light of the subject matter and the effects and consequences, obviously evidence of facts and circumstances, *not mere conversations,* leading up to and concurrent with the making of the contract, is often necessary."

If by this statement it is intended to state as a rule of law that prior conversations are not admissible to explain an ambiguity in a contract, I disagree with the proposition. The contrary rule was established in *Ganson v. Madigan,* 15 Wis. 144, which was approved by this court in *Burton v. Douglass,* 141 Wis. 110, 116, 123 N. W. 631, wherein a number of other cases approving of the rule in *Ganson v. Madigan* are approved. If the court means that such conversations cannot

be shown to import ambiguity into an otherwise unambiguous contract, I agree entirely with what is said.

4. The mere fact that a contract may appear unreasonable to this court in view of the things that have transpired since it was made, or even in view of the situation of the parties when it was made, is not in itself a sufficient reason for holding the contract to be ambiguous. People have the privilege to and as a matter of fact do frequently make foolish contracts.

5. The integrity of written contracts should be preserved. Writings embodying the agreements of parties and signed by them seldom lie. Living witnesses often do, particularly when it is to their interest to do so. It is charitable to say that perhaps frequently they are only mistaken.

6. I think it is unfortunate to extend the rule of *Johnson v. Pugh,* 110 Wis. 167, 170, 85 N. W. 641, and many other cases, as to when parol evidence is admissible to vary or even to explain a written contract, and, if I have a correct conception of what is decided in this case, many things are said which are not in harmony with that case.

7. Where a contract does not express the true agreement of parties, resort may be had to a court of equity to reform it in an appropriate proceeding brought for that purpose. I think the orderly proceeding of going into such a court for such a purpose should be continued instead of attempting reformation by importing ambiguity into a contract because it may appear unreasonable or even ridiculous, and then interpreting the contract as meaning something different from what its words plainly imply.