**Tom KRITSER, Appellant,**

**v.**

**FIRST NATIONAL BANK OF AMARILLO, et al., Appellees.**

**No. 7207.**

Court of Civil Appeals of Texas, Beaumont.

Jan. 21, 1971.

Rehearing Denied Feb. 11, 1971.

Hugh Umphres, Jr., Jim Fullingim, Amarillo, for appellant.

Clarence P. Brazill, Jr., Richard A. Jennings, Lubbock, Harry M. Roberts, Jr., Dallas, Joseph H. Pool, Roy C. Snodgrass, Jr., Amarillo, for appellees.

KEITH, Justice.

This appeal is from a judgment entered in a declaratory judgment proceeding brought to interpret the habendum clause in a deed. The particular deed in issue was executed in 1921 by R. B. Masterson and his wife, Anna, for the purpose of conveying a life estate in certain lands in Potter and Moore Counties, to their daughter, Anna Belle Kritser, with remainder to other persons. There is no serious dispute between the parties over the fact that Anna Belle Kritser's interest is a life estate; but, the character of the remainder interests and the identification of the remaindermen, forms the basis of the appeal. Judgment followed a trial to the court, and the ultimate conclusion of law was that "at the termination of Anna Belle Kritser's life estate, grantors intended to convey and did convey fee simple interests under said deed to the then living descendants of Anna Belle Kritser, per stirpes."

On September 22, 1921, R. B. Masterson and his wife, Anna, executed four deeds conveying certain tracts of land to each of their four daughters, Mary Masterson (now Mary Fain), Sallie Lee Scott, Fanny Fern Weymouth and Anna Belle Kritser. Three of the four deeds so executed show identical alterations in the habendum clause as we will mention shortly. The original deed to Anna Belle Kritser involved in this suit had been lost or misplaced; but, the recorded deed, filed for record on February 13, 1925 discloses that the habendum clause is identical with the altered clauses contained in the deeds to Anna Belle's three sisters.

Grantor, R. B. Masterson, in the presence of his son-in-law, C. E. Weymouth, altered the habendum clause in each of the four original deeds to his daughters by striking out the words "per stirpes" with a red pencil and inserting the same words in ink as demonstrated in the deeds to Mary Masterson, Sallie Lee Scott and Fanny Fern Weymouth. Accordingly, the habendum clause in the original deed to Anna Belle Kritser was as follows:

"TO HAVE AND TO HOLD, * * * unto her, the said Anna Belle Kritser, as her separate estate and property for and during her lifetime, and at her death unto her children (or child), ~~per stirpes,~~ per stirpes and their heirs ∧ and assigns forever, * * *"[1]

At the time of these conveyances to the four sisters, Anna Belle Kritser had three living children, Tom Kritser (our appellant), David Kritser, and Shelby Kritser. A fourth child, Mary Kritser Miller (the original plaintiff in this action and an appellee herein) was born later. A fifth child, Martha Elizabeth Kritser, a twin sister of Mary Kritser Miller, died May 29,

---

1. This portion of the habendum clause in the deed will be referred to hereinafter as the "primary granting clause," and was followed in the deed by language which we shall refer to as the "alternative granting clause" reading as follows: " * * * or if she, the said Anna Belle Kritser, shall die leaving neither child nor children surviving, then unto her sisters Sallie Lee Scott, Fanny Fern Weymouth and Mary Masterson and the children of such sister or sisters as may predecease the said Anna Belle Kritser, in equal shares, their heirs per stirpes and assigns forever."
The grantor made precisely the same changes in this alternative granting clause as he had made in the primary clause, and our quotation reflects the clause after giving effect to the changes made by the grantor.

1925, less than a year after birth. Another child, Jane Kritser, died on January 14, 1920, in infancy and prior to the above described conveyances. Shelby Kritser died August 13, 1966, leaving issue surviving him. David Kritser died October 25, 1968, leaving issue surviving him. Mary Kritser Miller and Tom Kritser are still living and each has living descendants. Anna Belle Kritser, the original grantee, is still alive and is an appellee herein.

There being no procedural questions involved in the cause, and the trial court having had all of the necessary parties before the court, we turn to a consideration of the contentions of the appellant as expressed in his two points which we quote in the margin.[2]

In the excellent brief filed by appellant's counsel, we find the basic thrust of the appeal in these words:

"It is clear from reading the deed that the grantors, R. B. Masterson and Anna E. Masterson, were group minded. They granted the remainder not to individuals but to a class which could expand by births and contract by deaths. * * * The truth is, the Mastersons were not trying to provide for their great grandchildren. By the deed they exhibited a desire the property go to their daughter's children if any survived her, and otherwise to their other daughters and their children."

From this premise, it is argued that the gift being to a class (Mrs. Kritser's children), the class does not close until she dies; and, "the class interest is defeated according to the deed expressly if all members of the class predecease the life tenant.[3] This argues against any inferred partial defeat of a part of the total remainder by individual single class member predeceasings. The provision the class interest shall go to the sisters of Mrs. Kritser if all her children predecease her implies the converse is also true—that if all her children do not predecease her the class shares that lapse will not fall out of the class gift and the sisters will take nothing."

The deed is one of gift[4] and in such a case, we construe it in accordance with the rule announced in Smith v. Allison, 157 Tex. 220, 301 S.W.2d 608, 614 (1957), wherein the court said:

"The ultimate purpose in construing a deed is to ascertain the intention of the grantor, and when this intention is ascertained, that construction which carries the intention into effect, when such intention is lawful, governs and controls. [Citations omitted.]"

See also, Newsom v. Newsom, 378 S.W.2d 842, 844 (Tex.Sup., 1964); Hejl v. Wirth,

---

2. "The trial court erred in holding that the deed executed by R. B. Masterson and wife and which is in issue in this suit can operate and has operated to vest in parties other than Tom Kritser and Mary Miller and the children, if any, hereafter born to Anna Belle Kritser an interest in the remainder estate created under the terms of said deed, because as a matter of law the deed, when properly construed in light of the admissible evidence in the record, operates to convey to the surviving children of Anna Belle Kritser, as a class, the entire remainder estate."

"The trial court erred in not holding that the deed executed by R. B. Masterson and wife and which is in issue in this suit operated to convey to the surviving children of Anna Belle Kritser, as a class, the entire remainder estate following the life estate created in said deed in favor of Anna Belle Kritser."

3. The reference is to the alternative granting clause, see footnote 1, supra.

4. The deed recites: " * * * for and in consideration of the love and affection we have for our daughter Anna Belle Kritser and our desire to provide for her support during her life, have Bargained and Sold and do hereby Give, Grant, sell and convey * * * [etc.] * * * " See Gibbs v. Barkley, 242 S.W. 462, 464 (Tex.Com.App., 1922, opinion adopted), and the comment on Gibbs found in Smith v. Allison, infra, 301 S.W.2d at p. 616.

161 Tex. 609, 343 S.W.2d 226, 230 (1961); Robinson v. Glenn, 150 Tex. 169, 238 S.W. 2d 169, 170 (1951).

Weymouth testified that Masterson, while making the changes in the several deeds, stated that "he wanted this land to go to the children of the blood, as far as he could pitch it, and he inserted the word 'per stirpes' in two instances after 'their heirs' * * * so there would be no misunderstanding that those individuals who might be considered as heirs were of the blood. * * * He didn't want any adopted children to benefit in the ownership of this land."

■ This testimony was received properly, not for the purpose of varying the terms or words used, but for the purpose of ascertaining the intention of grantor. The authorities are collated in an opinion by Justice Bateman in King v. City of Dallas, 374 S.W.2d 707, 712 (Tex.Civ.App.— Dallas, 1964, error ref. n. r. e.), from which we take this lengthy but pertinent quotation:

"Our courts have held numerous times that even in the case of an unambiguous deed it is not improper for the court to admit evidence of the existing facts and circumstances for the purpose of ascertaining the real intention of the parties. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004; Scott v. Walden, 140 Tex. 31, 165 S.W.2d 449, 154 A.L.R. 1; Stevens v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 212 S.W. 639. The following language used by Chief Justice Alexander in Murphy v. Dilworth, supra, is applicable here:

" 'In other words, if the meaning of the language used in a written contract becomes uncertain when an attempt is made to apply it to the subject matter of the contract, though not otherwise uncertain, parol evidence is permissible to aid in making the application. First National Bank v. Rush, Tex.Com.App., 210 S.W. 521; Klueter v. Joseph Schlitz

Brewing Co., 143 Wis. 347, 128 N.W. 43, 32 L.R.A.,N.S., 383; 22 C.J. 1192. This does not mean, however, that the parties may prove the making of an agreement different from that expressed in the written contract, nor that the unambiguous language used in the contract may be violated or the legal effect thereof changed. It merely permits proof of the then existing circumstances, in order to enable the court to apply the language used therein to the facts as they then existed. Reynolds v. McMan Oil & Gas Co., Tex.Com.App., 11 S.W.2d 778; Southern Gas & Gasoline Engine Co. v. Richolson, Tex.Com.App., 216 S.W. 158.'

"As said by Judge Hickman, then a member of the Commission of Appeals, in Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579, 583:

" 'It is proper to consider parol testimony as to the circumstances surrounding the parties out of which the contracts grew, not to add to or vary their terms, but to apply the contracts to the subjects with which they deal for the purpose of ascertaining the real intention of the parties. First National Bank of Amarillo v. Rush, Tex.Com.App., 210 S.W. 521; Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007.' "

2 McCormick & Ray, Texas Law of Evidence (2nd Ed.), § 1681, p. 516, states the rule in this manner:

"Evidence offered strictly for the purpose of aiding in the construction of a written instrument is not within the prohibition of the Parol Evidence Rule."

The fact that the grantor altered the deeds which had been drafted by an attorney clearly shows that he had a positive and definite purpose to make some change in the legal effect of the deeds as originally prepared. Thus, the situation we face is somewhat similar to that prevailing wherein a printed instrument has been altered in handwriting, the rule being expressed in J. K. Hughes Oil Co. v. Mayflower Inv. Co.,

193 S.W.2d 971, 973 (Tex.Civ.App.—Texarkana, 1946, error ref.):

"Another rule quite generally applied in ascertaining the correct meaning of an instrument where there is a repugnance between a printed portion thereof and a written or typewritten part, is that the latter will control."

Or, as was said in Houston Pipe Line Company v. Dwyer, 374 S.W.2d 662, 664 (Tex.Sup., 1964):

"The deletions made by the parties in the 1926 agreement may be considered by this court in order to arrive at the true meaning and intention of the parties."

At the time of the execution of the deed, and at the time of the delivery thereof, Anna Belle Kritser had children then in being who had an immediate right to possession upon the termination of her life estate conveyed in the primary granting clause. And, there are children now in being who have an immediate right to possession at the termination of her life estate. So long as Anna Belle Kritser *and any child* of hers are both alive, such child's descendants hold contingent remainder interests.

In our construction of the deed, and in ascertaining the legal effect of the words chosen by the grantor to express his intention, we turn to a consideration of the law regarding future interests to properly identify the remaindermen in accordance with his intention.

Chief Justice Phillips, in Caples v. Ward, 107 Tex. 341, 179 S.W. 856, 857–858 (1915), spoke of our problem saying:

"A remainder is vested where there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate. It is an immediate right of present enjoyment or a present right of future enjoyment, a fixed interest, with only the right of possession postponed until the ending of a particular estate. 4 Kent,

202; Bufford v. Holliman, 10 Tex. 560, 60 Am.Dec. 223. To use a common illustration of the books, where there is a grant of an estate to A. for life, and, after his death, to B. in fee, the remainder is a vested one, since the grant creates a present fixed interest, with the right of future enjoyment in B."

See also: Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888, 891 (1948); Trimble v. Farmer, 157 Tex. 533, 305 S.W.2d 157, 160 (1957); Jones v. Walter, 436 S.W.2d 130, 132 (Tex.Sup., 1968); Restatement of the Law of Property, § 157.

We are taught that we should follow the general rules of construction of instruments of conveyance so as to ascertain and effectuate the intention of the parties in determining whether a condition is a condition precedent or a condition subsequent. City of Dallas v. Etheridge, 152 Tex. 9, 253 S.W.2d 640, 642 (1952). In this same case, Chief Justice Calvert approved the distinction made by the Court of Civil Appeals between the two types of conditions.

" 'A condition precedent in an instrument affecting the title to land is said to be one which must take place before the estate can vest or become enlarged, while a condition subsequent is one which operates upon an estate already created and vested, the latter rendering the estate so created and vested liable to be defeated.' " (253 S.W.2d at p. 642, quoting from 246 S.W.2d at p. 694.)

In Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579, 582, 57 A.L.R.2d 97 (1955), the court was considering the meaning of the words "and to his child or children if any survive him" following a bequest to a named individual. This is the holding:

"The conclusion that the remainder in the child or children is contingent rather than vested is also impelled by the words 'if any survive him'. Survival is made a condition precedent to the vesting of the remainder rather than a condition of defeasance."

Following *Guilliams* are Coker v. Eckert, 369 S.W.2d 471, 474 (Tex.Civ.App.—Fort Worth, 1963, error ref., n. r. e.); and Stubbs v. Stubbs, 447 S.W.2d 954, 956 (Tex.Civ.App.—Waco, 1969, error ref. n. r. e.). See also, Hunt v. Carroll, 157 S.W.2d 429, 437 (Tex.Civ.App.—Beaumont, 1941), error dismissed 140 Tex. 424, 168 S.W.2d 238 (1943).

It is clear from the language found in the primary granting clause, as changed by the grantors, that if all of Anna Belle Kritser's children were to survive the termination of her life estate, they would share the remainder equally to the exclusion of all other persons, including their own children. But, this is not our situation since two have predeceased Anna Belle (Shelby and David) and each left issue surviving. The trial court held, under these circumstances, that the grantors intended to convey, at the termination of Anna Belle Kritser's life estate, a fee simple title to her then living descendants, per stirpes. Under this holding, the surviving issue of Shelby and David will take by substitution the share of the remainder which would otherwise vest in their deceased parent (the child of Anna Belle Kritser) had such deceased parent survived Anna Belle Kritser.

In passing upon the question under consideration, we bear in mind that "it is the duty of the court to presume that he [grantor] knew the legal meaning of the terms which he employed in the deed." [Holloway's Unknown Heirs v. Whatley, 104 S.W.2d 646, 650 (Tex.Civ.App.—Beaumont, 1937), affirmed, 133 Tex. 608, 131 S.W.2d 89, 123 A.L.R. 843 (1939)].

■ The change in the deed made by grantors brings the case within the rule that any words used to modify "heirs" which are sufficient to designate certain individuals answering the description of heirs at the termination of the intervening estate will be held to change the word "heirs" from its technical sense to words of purchase. Hancock v. Butler, 21 Tex. 804, 812–813 (1858); Simonton v. White, 93 Tex. 50, 53 S.W. 339, 340–341 (1899); Finley v. Finley, 318 S.W.2d 478, 482 (Tex.Civ.App.—Eastland, 1958), error ref. n. r. e., 159 Tex. 582, 324 S.W.2d 551, 552 (1959).

■ We are of the opinion that the words "per stirpes" inserted by the grantors in the habendum clause sufficiently modify the word "heirs" therein to change it to a word of purchase. In making this change, the grantor provided an express method of dividing the property among *designated* heirs. Simonton v. White, supra; Wallace v. First National Bank of Paris, 120 Tex. 92, 35 S.W.2d 1036, 1037 (1931); Robinson v. Glenn, supra, 238 S.W.2d at p. 170. See also, case note in 29 Tex.Law Rev. 842 (1951). Cf. Power v. Landram, 464 S.W.2d 99 (Tex.Sup., December 31, 1970).

In Wallace v. First National Bank of Paris, supra, Judge Sharp, in construing a will, said:

"In a will to a person for the term of his natural life and at his death to his 'bodily heirs,' the words 'bodily heirs' thus employed, if from the entire text of the will it is shown that the words 'bodily heirs' were used in the sense of children, are words of purchase and not of limitation." (35 S.W.2d at p. 1037.)

Judge Griffin, in Robinson v. Glenn, supra, was construing a deed which conveyed property to Robinson for and during the period of her natural life and upon her death, "then unto her bodily heirs, share and share alike." It was held that the presence of the quoted phrase "prevents the Rule in Shelley's Case from having application." (238 S.W.2d at p. 171.)

See also, Gardner v. Dillard, 258 S.W.2d 93, 95 (Tex.Civ.App.—Galveston, 1953, error ref.); Hancock v. Butler, supra, 21 Tex. at pp. 812–813. In each of the cases just mentioned, the courts held that the modifying words together with the word "heirs" were words of purchase.

Nevertheless, appellant argues that "heirs per stirpes" cannot be words of purchase because they do not provide a course of descent inconsistent with the common law of England, saying:

"In order to be used in its common law. technical sense, the term 'heirs' must not be so modified as to provide a course of descent contrary to the common law of England, because such modification makes it apparent from the context of the instrument itself that the term is not used in its common law technical sense."

The position so taken does not conform to the Texas authorities. In addition to the authorities just mentioned, it was held, in Vaughan v. Pearce, 153 S.W. 171, 173 (Tex.Civ.App.—Amarillo, 1912, error ref.), that "heirs by direct line of descent" were words of purchase.

The construction of the deed urged upon us by appellant would result in a disinheritance of the descendants of two of Anna Belle Kritser's children. In giving effect to the grantors' intention, our primary purpose, we have but to point to the insertion of the words "per stirpes" as a modification of the word "heirs". Thus, the grantors provided that the distribution would be made among descendants of the deceased child, thereby excluding the spouse of the deceased child. And, as has been pointed out by Professor Bailey in "Intestacy in Texas: Some Doubts and Queries", 32 Tex.Law Rev. 497, 509 (1954):

" * * * the term 'per stirpes' denotes the type of distribution required by the common law of descent, each generation representing its parent and taking only what its parent would have taken if living."

The phrase found in the primary granting clause, "her children (or child)", *standing alone,* would mean that if one of Anna Belle Kritser's children predeceased her, then that child's remainder interest would pass to her other children who did survive. On the other hand, the phrase "and their

heirs per stirpes", *standing alone,* would mean that if one of Anna Belle Kritser's children predeceased her, then that child's remainder interest would pass to her descendants per stirpes. But neither of the phrases stands alone. When read together, as we must so read them, we reach the result which, in our opinion, the grantors desired:

(1) If one of Anna Belle Kritser's children predeceased her but was survived by "heirs per stirpes", these descendants would take that child's remainder interest.

(2) If one of Anna Belle Kritser's children predeceased her but was not survived by "heirs per stirpes", the child's siblings would take that child's remainder interest.

(3) If all of Anna Belle Kritser's children *and* their descendants per stirpes predeceased her, Anna Belle Kritser's sisters would take the remainder interest.

So holding, and being of the opinion that the judgment below is correct, it is in all things affirmed.