James S. BENSON, Appellant,

v.

Ray JONES and James Pemelton, Appellees.

No. 1423.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 22, 1979.

Rehearing Denied March 15, 1979.

Randall P. Crane, San Benito, for appellant.

Mark L. Vanberg, Mercedes, for appellees.

## OPINION

BISSETT, Justice.

This appeal involves the interpretation of the rental provision in a written farm lease agreement. James S. Benson, John T. Benson, Ruby O. Benson and Pamela Benson brought suit against Ray Jones and James Pemelton to recover $2,955.85, alleged to be due them under the lease agreement for past due rental and interest on the rental for the year commencing September 1, 1976, and terminating August 31, 1977 (the first year of the lease), for damages to the land covered by the lease agreement, and for attorney's fees. Trial was to the court, sitting without a jury. Judgment was rendered that plaintiffs take nothing by their suit. Plaintiffs have appealed only from those portions of the judgment concerning their action to recover $2,955.85 for past due rentals and interest on such rental, together with attorney's fees.

Findings of fact were neither requested nor filed. Two points of error are presented. First, it is contended that the trial court erred in rendering a judgment which varied the terms of a clear and unambiguous written lease agreement. Next, it is asserted that the court erred in rendering a judgment which rescinded or modified a portion of the written lease agreement.

The lease agreement involved was executed by plaintiffs, as "lessor", and by defendants, as "lessees." It was signed on March 14, 1977, and in pertinent part, provided:

"LESSOR has this day and does by these presents lease and demise unto LESSEES the following described lands situated in Cameron County, Texas, to-wit:

954.3 tillable acres of land, more or less, known as the Benson Farms . . .

for a period from the 1st day of September, 1976 to the 31st day of August, 1978, for rental price of $50 per acre per year based on the net tillable acres in the property above described based on ASCS measurements payable as follows:

1. One year's total rental, plus interest since the start of the lease on this amount as it accrues at the rate of 9% per annum, which total sum is payable on September 15, 1977."

\* \* \* \* \* \*

". . . LESSEES agree to grow no sugar cane on the property without the consent of the LESSOR, notwithstanding the above provisions, LESSEES shall be allowed to use that portion of the property which is presently planted in sugar cane . . . in the production of sugar cane for the period of the 1977–1978 sugar cane harvest season . . ."

In September, 1977, defendants paid plaintiffs $49,053.50 as rental and interest on rental for the period commencing September 1, 1976 and terminating August 31, 1977. Plaintiffs demanded an additional payment of $2,955.85, which they claim is the unpaid balance on the rental and interest on rental due them for the first year's lease under the terms of the lease agreement. Defendants refused to pay the $2,955.85, and suit was then instituted by plaintiffs. Rental for the second year of the lease, September 1, 1977 to August 31, 1978 is not involved in this case.

It was stipulated at the trial:

1. The leased land contained 954.3 tillable acres according to ASCS measurements;

2. Plaintiffs are entitled to one-third of the amount of any judgment rendered in their favor as reasonable attorney's fees;

3. Plaintiffs had a sugar cane crop on part of the land under lease that was not removed from the land until May 4, 1977.

Plaintiffs contend that under the plain and unambiguous provisions of the lease that the rental for the first year is computed at 954.3 × $50, totalling $47,715.00, and that the interest thereon amounts to $4,294.35, making a total of $52,009.35 due on September 15, 1977. Defendants contend that the lease provisions require only a total payment of $49,053.50 (including rental and interest on rental), which they paid to plaintiffs, since, under the terms of the lease, no rental was due on that portion of the land which remained in plaintiffs' possession from September 1, 1976, until May 4, 1977, when the sugar cane which was growing on the land on September 1, 1976, was removed from the land under lease. It is admitted by all parties that the total amount due under plaintiffs' theory is $52,009.35 and the amount due under defendants' theory is $49,053.50, a difference of $2,955.85. We are asked to reverse the judgment of the trial court and to render judgment for plaintiffs in the sum of $2,955.85, together with attorney's fees in the amount of $985.28, and for interest thereon.

It is conclusively established by the evidence that: the parcel of land, 85.7 acres, upon which sugar cane was growing on September 1, 1976 (the "start" of the lease) was also growing on such acreage on March 14, 1977, when the lease was signed; from September 1, 1976, to May 4, 1977, when the sugar cane was harvested by plaintiffs, who kept all of the proceeds of the harvest, the possession of the 85.7 acres in sugar cane remained in plaintiffs; defendants were in possession thereof from and after May 4, 1977; defendants cultivated the sugar cane stubble after they obtained the possession of the sugar cane acreage on May 4, 1977, and harvested a crop therefrom during the 1977–1978 sugar cane season.

It is undisputed that checks in the total amount of $49,053 were accepted by defendants from plaintiffs. It is also undisputed that for the year September 1, 1975 to August 31, 1976, 810 acres out of the 954.3 acres were under a written lease from plaintiffs, as lessors, to defendants, as lessees, which provided for "cash" rent in the amount of $29,000.00 on 730 acres, and a fractional share of the crops produced from 80 acres thereof. There is testimony offered by defendants to the effect that it is

the custom of farmers in the vicinity of the 954.3 acres to use a cash per acre rental figure as opposed to a lump sum cash figure for the entire tract when they intend to pay as rental only a dollar amount for each acre delivered to them under an agreement of lease.

In support of their points, plaintiffs contend that the trial court permitted defendants to introduce parol testimony which varied the terms of the written lease agreement, and that the trial judge, in accepting such testimony "as true," in effect, rendered a judgment which is supported only by testimony in violation of the extrinsic evidence rule. In particular, they say that to allow defendants to introduce any parol evidence with regard to the rental due under the lease other than to establish the tillable acres measurement by the ASCS would result in the establishment of a rental which is different from the formula set out in the lease. On the other hand, defendants assert that such testimony was admissible because the lease agreement clearly contemplated that a rental based on the *net* tillable acres, as established by ASCS measurements, could only be construed as being rental determined by the number of tillable acres *actually delivered to them*, multiplied by $50. Under defendants' contention, no rental for the period of time from September 1, 1976, to May 4, 1977, with respect to the sugar cane acreage was due and payable under the lease. Plaintiffs contend otherwise.

Plaintiff James S. Benson testified that plaintiffs leased 954.3 acres of land to defendants; that "the agreed rental for that land" was $50 per acre; that the "defendant agreed to pay $50 per acre on the total leased acres"; and that the harvesting season for sugar cane is mid-October to mid-April. He further testified:

"Q Isn't it true that you withheld possession of the property where the sugar cane was until May 4, 1977?

A Yes, sir.

Q And yet you still ask that the defendants pay rental on this property?

A Absolutely.

Q You did receive all the proceeds of that harvest of sugar cane?

A Yes, sir.

Q You want the harvest and the rent?

A Yes, sir."

Defendant Ray Jones, in essence, testified that defendants did not intend or agree to rent the land that had sugar cane growing on it for the period September 1, 1976, to date of harvest, but intended to rent such land only for the second year of the lease. In particular he stated:

". . . I got it (the sugar cane land) for the second year. That's the only reason the 954.3 acres was on there, because we were talking about two years. If we had been talking about one year, then, we wouldn't have had the sugar cane property in there. It could have been something like 954.3 less something."

He further testified in answer to questions propounded by plaintiffs' counsel, as follows:

"Q Does it (the lease agreement) say anywhere in here that you will pay for anything other than 954.3 acres or the acreage based on the ASCS measurements?

A Part of that is $50 per acre per year. That's a continuation of the sentence based on the net tillable acres. We did not receive 954.3 tillable acres."

* * * * * *

"Q What was the purpose of the per-acre basis?

A To pay for what I had received, for what I had use of.

Q And you never intended to pay for the cane property until you got possession?

A No, sir."

* * * * * *

"Q Well, why was nothing put in the lease to that effect, then, to the effect that you were not paying for what you had not gotten up till (sic) that point?

A There never was an assumption that that was to be paid for.

Q You don't think by signing that lease on March the 14th you waived any objection you might have had to not having gotten possession of that land?

A No, I don't feel like I was entitled to pay for it. As I said yesterday, it was based on acreage. If it had been a lump sum and I had accepted that acreage as a lump sum, it might have been a little different story. But it's based on acres, $50.00 an acre of tillable acres that was leased."

 The extrinsic evidence rule is not a rule of evidence, but is a rule of substantive law; consequently, evidence adduced by parties to a written instrument in violation of that rule is incompetent, has no probative force, and even though admitted without objection, cannot support the verdict of a jury or findings of fact by the trial court, or a judgment based on such verdict or findings. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30 (1958). As a general rule, the written instrument should be construed so as to give effect to the parties' intention, as revealed from a consideration of the instrument as a whole. *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166 (1953). However, our Supreme Court has on several occasions held that even in the case of an unambiguous written instrument, as is the case here, a trial court may properly admit extrinsic evidence, such as parol testimony of the facts and circumstances surrounding or pertaining to the making of the agreement, in order that the court may apply the language used in the instrument to the facts and circumstances then existing for the purpose of ascertaining the true intention of the parties. The following language which appears in *Murphy v. Dilworth*, 137 Tex. 32, 151 S.W.2d 1004 (1941), is applicable to this case:

"It is true that, even though a written contract be unambiguous on its face, parol evidence is admissible for the purpose of applying the contract to the subject with which it deals; and if by reason of some collateral matter an ambiguity then appears, proof of the facts and circumstances under which the agreement was made is admissible, in order that the language used in the contract may be read in the light thereof for the purpose of ascertaining the true intention of the parties as expressed in the agreement. In other words, if the meaning of the language used in a written contract becomes uncertain when an attempt is made to apply it to the subject matter of the contract, though not otherwise uncertain, parol evidence is permissible to aid in making the application. *First National Bank v. Rush*, Tex.Com.App., 210 S.W. 521; *Klueter v. Joseph Schlitz Brewing Co.*, 143 Wis. 347, 128 N.W. 43, 32 L.R. A.,N.S., 383; 22 C.J. 1192. . . ."

It was said in *Guardian Trust Co. v. Bauereisen*, 132 Tex. 396, 121 S.W.2d 579 (1938).

". . . It is proper to consider parol testimony as to the circumstances surrounding the parties out of which the contracts grew, not to add to or vary their terms, but to apply the contracts to the subjects with which they deal for the purpose of ascertaining the real intention of the parties. *First National Bank of Amarillo v. Rush*, Tex.Com.App., 210 S.W. 521; *Ryan v. Kent*, Tex.Com.App., 36 S.W.2d 1007. . . ."

 In the case at bar, both the plaintiff James S. Benson and the defendant Ray Jones testified as to the intention of each at the time the terms of the lease were agreed upon on September 1, 1976, and when it was reduced to writing and signed on March 14, 1977. We do not understand such testimony had the effect of varying, enlarging or contradicting the terms of the written agreement. The written agreement clearly purports to lease 954.3 "tillable acres" of land to defendants. Rent, however, was to be based, not upon the gross acres specified in the leasing clause, but upon "net" tillable acres according to ASCS measurements, with no explanation in the instrument of how to ascertain such "net" amount of "tillable" acres. The use of the word "net" by the parties in the rental clause is significant as it indicates some

type of deduction in quantity from the "954.3 tillable acres" demised and leased in the leasing clause. *Black's Law Dictionary* 1192 (4th Ed. 1951). Without further elucidation in the lease, as is the case here, rent according to the "net tillable acres," as determined by ASCS measurements, becomes uncertain in its meaning. Therefore, parol evidence was admissible, not for the purpose of varying, enlarging or contradicting the terms of the written agreement, but to show facts and circumstances surrounding the execution of the lease in order to ascertain the true intent of the parties in their use of the word "net" as it appears in the rental formula set out in the written agreement.

We have concluded that the trial court rendered a correct judgment. We have carefully examined the record and have considered all of plaintiffs' points of error. The points are overruled.

AFFIRMED.